**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Kenn Goldblatt et al.</u>

        v.                                Civil No. 10-cv-537-PB

<u>Nancy J. Geiger et al.</u>

**<u>REPORT AND RECOMMENDATION</u>**

        Before the Court for a determination as to whether the Court
has subject matter jurisdiction in this matter is the complaint
(doc. no. 1) filed by co-plaintiffs, Sima Mazzu and Kenn
Goldblatt, residents of Massachusetts and Texas, respectively.
<u>See</u> United States District Court District of New Hampshire Local
Rule ("LR") 4.3(d)(1)(A).  Defendants are judges and a marital
master in the Family Division of the New Hampshire court system
(the "Family Court").  The complaint, which includes the exhibits
attached thereto, <u>see</u> Fed. R. Civ. P. 10(c) (documents submitted
as exhibits to a pleading are part of the pleading for all
purposes), asserts claims based on the First and Fourteenth
Amendments, the Americans with Disabilities Act, 42 U.S.C.
§ 12132 <u>et seq.</u> ("ADA"), and state law.

        Also before this Court on referral for a Report and
Recommendation, are three motions (doc. nos. 9, 12, and 19),
filed by Plaintiff Mazzu, to enjoin a state Family Court case
instituted by Mazzu's ex-husband.  Plaintiff Goldblatt, a
paralegal enjoined from appearing in that Family Court

proceeding, has filed a memorandum in this Court (doc. no. 10) in support of Mazzu's request to stay the Family Court proceedings. Defendants, Marital Master Nancy J. Geiger, Family Court Judge John C. Emery, and Judge Edwin W. Kelly, New Hampshire Family Division Administrative Judge, have filed an objection (doc. no. 16) to the motion for a stay.

As explained in this Report and Recommendation, I find that the Court has subject matter jurisdiction to consider this matter. For reasons stated below, however, the motions to enjoin the state court proceeding (doc. nos. 9, 12, and 19) should be denied.

### Standard of Review of Pro Se Pleadings

Pro se pleadings are construed liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).

This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at ___, 129 S. Ct. at 1949. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'"  Id. (citation omitted); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)); Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 28 (1st Cir. 2010) ("The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for

relief.").   The plausibility requirement "simply calls for enough
facts to raise a reasonable expectation that discovery will
reveal evidence" of illegal conduct.  Bell Atl. Corp., 550 U.S.
at 556.  Determining if a complaint sufficiently states such a
claim for relief is a "context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense." Ashcroft, ___ U.S. at ___, 129 S. Ct. at 1950 (citation
omitted).

Background

A.   Family Court Proceeding

The claims here, and the pending motions, arise out of a
child custody dispute which has been pending for more than five
years in the Manchester branch of the Family Court.  That
proceeding involves Mazzu as respondent, her ex-husband, James,
as petitioner, and a guardian ad litem ("GAL") appointed to
represent Mazzu's daughter's interests.  Mazzu is represented by
counsel in the state proceeding, while her ex-husband has
proceeded pro se in state court.  Master Nancy Geiger and Judge
John Emery are presiding.

Mazzu has asserted that, as a result of having Post-
Traumatic Stress Disorder ("PTSD"), she is disabled, and that her
involvement in the Family Court proceeding exacerbates her
stress-related illness.  In May 2009, Mazzu's counsel, Attorney

4

Mooney, filed a request for ADA accommodations for Mazzu in Family Court, citing PTSD as a disability qualifying her for the entitlements and benefits of that law.  The record before me does not reveal the specific terms of that request.  The Family Court denied the requested accommodations as unreasonable on June 18, 2009.  See Compl. (doc. no. 1).

On June 25, 2010, the Family Court held a status conference. Mazzu participated by telephone and through counsel, and her ex-husband appeared pro se.  Mazzu requested accommodations for her disability in future court hearings.  The court informed Attorney Mooney that if Mazzu required accommodations, counsel needed to inform the court of the nature of Mazzu's disability and the accommodations that she needed.  See In re Mazzu, No. 216-2005-DM-00611 (N.H. Fam. Div., Manchester, N.H., Sept. 27, 2010), at 1 (Ex. B to Compl.) (doc. no. 1-2) (hereinafter "September 27 Order").

Sometime in August 2010, Mazzu hired Goldblatt, a paralegal, to represent her in Family Court.  On August 20, 2010, Goldblatt filed an affidavit in the Family Court, along with a durable power of attorney executed by Mazzu, and entered an appearance as Mazzu's non-lawyer representative, citing a state district court rule, analogous to N.H. Fam. Div. R. ("FD Rule") 1.18.  FD Rule 1.18 requires a non-lawyer seeking to represent a party in Family Court to file a power of attorney and an affidavit disclosing

certain information regarding prior convictions, prior violations of court orders or rules of professional conduct, and prior proceedings in which he or she has appeared on behalf of another person. Id.

On August 24, 2010, the Family Court held a hearing regarding child custody issues. Goldblatt participated by telephone. The court reminded Attorney Mooney at that time that the court needed to know the nature of Mazzu's disability as well as the accommodations required for future hearings. See September 27 Order at 2.

On August 25, 2010, Goldblatt submitted for in camera review a packet of materials, including a motion for leave to file an amicus curiae brief and a proposed amicus brief, see Ex. E to Compl. (doc. no. 1-5), addressing his role as an advocate for persons with disabilities under the ADA, and Mazzu's rights under the ADA. Additionally, Goldblatt submitted a request for ADA accommodations for Mazzu, which is not part of the record before me. Over the succeeding weeks, Goldblatt filed pleadings in Family Court, participated in an "ex parte hearing" scheduled by the GAL, exchanged emails with the GAL and Attorney Mooney, and moved for sanctions against Mazzu's ex-husband for filing frivolous pleadings. Compl. (doc. no. 1).

With respect to the email exchange between the GAL and Attorney Mooney, Goldblatt became involved because he believed

that those parties were engaged in "pointless bickering."  Id.
Goldblatt informed the parties and the court of his belief in
that regard.  See Ex. A to Compl. (doc. no. 1-1) ("Advocate's
Response to GAL's Motions to Exceed and to Compel"), at 1-2.
Goldblatt and Mazzu have asserted that the GAL filed a motion in
Family Court, citing an email from Goldblatt that the GAL
characterized as "threatening."  The cited motion filed by the
GAL is not part of the record here.  Thereafter, Goldblatt filed
a memorandum in Family Court setting forth the context in which
the cited email had been sent.  See id.

On September 27, 2010, Master Geiger considered whether
Goldblatt was qualified to serve as a representative of Mazzu, in
light of the requirements of FD Rule 1.18.  The court reviewed
the items filed by Goldblatt, including his affidavit specifying
his prior litigation experience.  The court also considered
outside sources of information regarding cases in which he had
been involved, including an order published on a website.  The
Marital Master concluded that Goldblatt was not qualified to
serve as a non-lawyer representative in the Family Court.  In her
recommended disposition of the issue, Master Geiger directed that
Goldblatt be barred from participating as Mazzu's representative.
Additionally, she directed that Goldblatt's filings be stricken
from the record.  Specifically, Master Geiger found that Mr.
Goldblatt "cannot satisfy the elements" of FD Rule 1.18, and

further concluded that:

> Mr. Goldblatt is permanently enjoined from making legal
> arguments, filing pleadings, or otherwise acting as Ms.
> Mazzu's attorney in this case.  Mr. Goldblatt's
> appearance is struck and all filings and pleadings that
> he has submitted to the Court will be returned to him
> and treated as if they were never filed, except for . .
> . Mr. Goldblatt's affidavit, his Durable Power of
> Attorney, and his Appearance as Sima Mazzu's non-
> attorney representative.  Mr. Goldblatt may work with
> Ms. Mazzu and her attorney, if they still wish to
> retain him, but he may not participate in this
> proceeding in any way as Ms. Mazzu's non-lawyer
> representative.  All pleadings filed relative to
> motions and submissions filed by Mr. Goldblatt are moot
> . . . .

September 27 Order.

The Marital Master also directed Mazzu to file, through

counsel, "(1) a doctor's note or report, stating that she has a

disability and requires reasonable accommodations under the

[ADA], and (2) a list of accommodations" needed for Mazzu to

participate in an upcoming hearing, and indicated that, if the

requested information were filed by October 8, 2010, the court

would review the list of accommodations, determine which would be

reasonable, and would provide them at the hearing.  Id.  Judge

Emery approved and entered the Marital Master's recommendations

in the September 27 Order.  Id.

On October 4, 2010, Goldblatt filed a motion to reconsider

the September 27 Order.  That motion was denied.  In a

recommended decision issued by Master Geiger, and adopted by

Judge Emery on October 25, 2010, the court reaffirmed its

8

injunction against Goldblatt.  The court found that Mazzu would suffer no prejudice from Goldblatt's exclusion, as she had competent counsel, and she and her attorney could continue to consult with Goldblatt relative to ADA issues.  See Ex. F to Compl. (doc. no. 1-6) (In re Mazzu, No. 216-2005-DM-611 (Manchester, N.H. Fam. Div. Oct. 25, 2010)).

On November 15, 2010, Goldblatt filed a petition for writ of mandamus in the New Hampshire Supreme Court ("NHSC"), seeking reversal of the order enjoining his participation in the case. The NHSC denied that petition.  See In re Goldblatt, No. 2010-0777 (Dec. 16, 2010) (citing NHSC Rule 11, regarding petitions for original jurisdiction).

The Family Court case has proceeded without Goldblatt since September 27, 2010.  On October 15, 2010, the Family Court again directed Mazzu to file a list of requested accommodations. Attorney Mooney prepared and filed a memorandum relating to the request for accommodations, in response to the Family Court's October 15, 2010, order.  As of March 2, 2011, the Family Court had not ruled on Mazzu's request for ADA accommodations.

B.   Right to Know Request

On October 4, 2010, in response to the September 27 Order enjoining his participation in the Family Court proceeding, Goldblatt requested in a letter to Master Geiger all of the

information she used in preparing the September 27 Order.  That letter was forwarded to the Office of the Administrative Law Judge for the Family Division.  Goldblatt subsequently received a letter from Attorney Gina Apicelli of that office, informing him that his letter addressed to a sitting judge had been redirected to Attorney Howard Zibel, NHSC General Counsel.

On October 20, 2010, Goldblatt responded in a letter addressed to Attorney Apicelli and Judge Edwin Kelly.  In that letter, Goldblatt asserted that his request for information regarding the bases for the Marital Master's decision constituted a request under the New Hampshire Right to Know Law, N.H. Rev. Stat. Ann. ("RSA") § 91-A.  In that letter, Goldblatt reiterated his arguments regarding his role as an ADA advocate, and his contention that the order barring his participation violated both his and Mazzu's rights.  See Ex. G (doc. no. 1-7).

In a tersely worded reply, dated October 27, 2010, Judge Kelly stated:

> Pursuant to the [September 27 Order], you have been permanently enjoined from making legal arguments, filing pleadings, or otherwise acting as Ms. Mazzu's attorney in the case pending before the court.
>
> Your letter to me . . . dated October 20, 2010, falls within the parameters of that Order.  In the future, neither this office nor the Manchester Family Division will accept or respond to communication from you concerning this case.

Ex. G to Compl. (doc. no. 1-7) at 4.

On November 9, 2010, Goldblatt received a letter from
Attorney Zibel regarding his October 4 request for information.
Attorney Zibel's letter is quoted in the Complaint as stating
that background information underlying a court order, such as
that specifically requested in Goldblatt's October 4 request, is
not publicly accessible, and is therefore beyond the scope of
documents available through a Right to Know request.  See Compl.

C.   The Claims

Construed liberally, the complaint (doc. no. 1) includes the
following claims, asserted either by Mazzu (claims numbered 1-5
below) or Goldblatt (claims numbered 6-10 below)[1]:

1.   Defendants violated Mazzu's rights under state law
and the ADA, by barring Goldblatt from appearing as Mazzu's
representative in the Family Court proceeding.  (Compl.
Counts 2, 3, 8, 10, and 12).[2]

2.   Defendants violated Mazzu's rights under Title II
of the ADA: (a) in failing to expeditiously grant Mazzu's
request for a reasonable accommodation for her disability;
and (b) in requiring Mazzu to file information relating to

_____

[1]The claims, as identified in this Report and
Recommendation, will be considered to be the claims raised in
this case for all purposes.  If plaintiffs object to the claims
as identified, they must do so by filing a timely objection to
this Report and Recommendation or by properly moving to amend the
complaint (doc. no. 1).

[2]Fourteen counts are listed in the complaint.  This Report
and Recommendation has consolidated some of the claims in the
complaint, and has separated Mazzu's claims from Goldblatt's.
The claims are thus numbered here differently than they are in
the complaint.  The parenthetical at the end of each claim
identifies the manner in which the counts in the complaint (doc.
no. 1) were enumerated therein.

her request for ADA accommodations, without ordering that
such filings be made under seal. (Compl. Count 6).

    3.   Defendants violated Mazzu's right to due process
under the Fourteenth Amendment: (a) by enjoining Goldblatt's
participation in the Family Court proceeding without prior
notice or a hearing; and (b) by striking Goldblatt's
pleadings and directing the clerk to return those documents
to Goldblatt, thereby stripping the record of evidence and
argument that Mazzu needs to litigate the action in Family
Court. (Compl. Count 10).

    4.   Defendants violated Mazzu's Fourteenth Amendment
right to equal protection in ordering Goldblatt's pleadings
stricken from the record. (Compl. Count 10).

    5.   Defendants negligently or intentionally injured
Mazzu's defense in the Family Court matter by ordering
Goldblatt's pleadings stricken, and caused her to suffer
pain and an exacerbation of her stress-related illness, by
failing to expeditiously resolve Mazzu's request for a
reasonable accommodation for her disability, and by
enjoining Goldblatt's participation in the Family Court
proceeding. (Compl. Counts 7 and 10).

    6.   Defendants violated Goldblatt's right to be free
from retaliation under the ADA, pursuant to 42 U.S.C.
§ 12203(b), by enjoining Goldblatt from participating in
Mazzu's Family Court proceeding and striking his pleadings.
(Compl. Count 4).

    7.   Defendants violated Goldblatt's rights under New
Hampshire law and the ADA to appear on Mazzu's behalf at her
request in the Family Court proceeding. (Compl. Counts 2,
3, and 8).

    8.   Defendants violated Goldblatt's Fourteenth
Amendment right not to be deprived of a liberty interest or
property right without due process of law by improperly:
(a) enjoining Goldblatt's participation in Mazzu's Family
Court proceeding; (b) ordering Goldblatt's pleadings
stricken from the record; and (c) denying Goldblatt's motion
for reconsideration, all without prior notice or a hearing.
(Compl. Counts 1-3, 5, and 8-10).

    9.   Defendants violated Goldblatt's rights under the
Equal Protection Clause of the Fourteenth Amendment (a) in

enjoining Goldblatt from participating in Mazzu's family court proceeding and striking his pleadings, without notice or a hearing, thereby treating Goldblatt differently from a guardian ad litem or "next friend" of Mazzu; and (b) in analogizing Goldblatt to the defendant in <u>State v. Settle</u>, 122 N.H. 214, 447 A.2d 1284 (1982), as the facts in that case differed from Goldblatt's circumstances.  (Compl. Counts 5, 8, and 10).

    10.  Defendants' response or failure to respond to Goldblatt's requests for information violated Goldblatt's: (a) right of access to governmental proceedings and information, pursuant to N.H. Const. Pt. I, art. 8, and the Right to Know law, RSA § 91-A; (b) Fourteenth Amendment right to due process; (c) First Amendment right to free speech; and (d) right not to suffer retaliation under the ADA.  (Compl. Counts 5, 10, 11, 13, and 14).

Plaintiffs seek money damages, injunctive relief, and declaratory relief.  Plaintiffs have sued defendants in their individual and official capacities.

Discussion

I.  <u>Mazzu's Damages Claims</u>

Mazzu's claims for damages, asserted against defendants in their individual capacities, are based on Master Geiger's recommendations, Judge Emery's rulings, and their failure to take certain actions expeditiously in the Family Court action. Mazzu's claims against the defendants relate only to acts and omissions occurring in the Family Court proceeding.

A.   <u>Individual Capacity Claims and Judicial Immunity</u>

Absolute judicial immunity protects judges from "civil liability for any normal and routine judicial act," except those taken in the "clear absence of all jurisdiction." <u>Cok v. Cosentino</u>, 876 F.2d 1, 2 (1st Cir. 1989) (citing <u>Stump v. Sparkman</u>, 435 U.S. 349, 357 (1978)).  Judicial immunity from claims for damages "applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." <u>Cok</u>, 876 F.2d at 2. Absolute, quasi-judicial immunity bars claims for damages against individuals performing discretionary functions closely related to the judicial process. <u>See id.</u>  The doctrine of judicial immunity applies to claims for damages, including those asserted under 42 U.S.C. § 1983 and the ADA. <u>See</u> <u>Del-Villar-Rosario v. P.R. Dep't of Justice</u>, 573 F. Supp. 2d 496, 500 (D.P.R. 2008); <u>see also</u> <u>Badillo v. Thorpe</u>, 158 Fed. App'x 208, 211 (11th Cir. 2005) (per curiam) (unpublished decision).

Marital masters perform adjudicatory functions, pursuant to their authority under New Hampshire law. <u>See</u> N.H. Super. Ct. Admin. R. 12-9 (marital masters preside in specified Family Court cases).  Marital masters hear certain cases in Family Court and make recommendations regarding the disposition of such cases and issues arising therein.  Family Court judges then review and approve or reject those recommendations and issue the final

14

ruling.  See Opinion of the Justices (Recommendations of Marital Masters), 155 N.H. 524, 527, 924 A.2d 377, 380 (2007).  Thus, marital masters in New Hampshire perform discretionary, quasi-judicial functions in presiding over family court proceedings and are absolutely immune from claims for damages for actions taken in their role in such cases.  See Turgeon v. Brock, No. 94-cv-569-SD, 1994 WL 529919, *2 (D.N.H. Sept. 29, 1994) (marital masters in New Hampshire are shielded by judicial immunity).

All of Mazzu's claims against Master Geiger and Judge Emery concern decisions issued in the Family Court proceeding, involving judgments relating to issues in the case, including whether to permit Goldblatt's appearance in that case, and whether to accept certain documents submitted under seal.  Ruling on a motion requesting alterations to courtroom procedures is a judicial act, requiring discretion, within the court's power to control the courtroom environment, to ensure compliance with federal laws, and to ensure that all parties are able to advance their cause in a safe, decorous, and fair setting.  See Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001) (judge's determination regarding court's ability to provide real time video transcription to party who raised by motion his need for assistive device during court proceedings was judicial act); see also In re O'Neil, 159 N.H. 615, 622, 992 A.2d 672, 678 (2010) ("'The power of the judiciary to control its own proceedings, the

conduct of participants, the actions of officers of the court and
the environment of the court is a power absolutely necessary for
a court to function effectively and do its job of administering
justice.'" (citation omitted)).  Furthermore, directing a party
to provide additional information before ruling on a request,
deciding when to rule on a pending motion, and deciding whether
to accept documents under seal are judicial acts taken within the
scope of a court's jurisdiction over a case.

Claiming that the management of non-lawyer ADA advocates
appearing in a case is a ministerial function, plaintiffs have
asserted in Count 14 of the Complaint (doc. no. 1) that the
Family Court lacked discretion to review the propriety of
Goldblatt's appearance in that Court, pursuant to the state court
rule and the ADA.  That argument, however, is belied by the plain
language of the pertinent state law and FD Rule 1.18, which imply
a role for the judge to determine if a person shall be "permitted
to appear," in part based on a showing of that person's "good
character."  See FD Rule 1.18 ("No person who is not a lawyer
will be permitted to appear, plead, prosecute or defend an action
for any party . . . unless of good character . . . ." (emphasis
added)); RSA § 311:1 (regarding non-lawyer representation).
Moreover, the court has inherent authority to control the conduct
of parties to a proceeding and the environment in the courtroom.
See In re O'Neil, 159 N.H. at 622, 992 A.2d at 678.  Reviewing a

non-lawyer's qualifications to determine if the person filing documents in the case shall be "permitted" to appear in a given case, pursuant to a state court rule or federal statute, is plainly a discretionary function of the presiding judicial officer.  FD Rule 1.18.

Goldblatt has contended that the ADA preempts these state court authorities to the extent that they may be construed to bar his participation as Mazzu's representative in Family Court.  The ADA is not intended to invalidate or limit the remedies, rights, and procedures of any state law that provides greater or equal protection for the rights of persons with disabilities as that statute.  See 42 U.S.C. § 12201(b).  Plaintiff has not demonstrated that the state court authority for governing the qualifications of party representatives is in any way inconsistent with the ADA, or that it provides less protection for the rights of persons with disabilities.  The Court finds no indicia of Congress's intent to restrict the state's inherent power to prescribe and review the qualifications of persons appearing on behalf of a party in court.  See Blue Cross Blue Shield of Mass. v. AstraZeneca Pharms. LP (In re Pharm. Indus. Average Wholesale Price Litig.), 582 F.3d 156, 174 (1st Cir. 2009) ("However Congress states or implies its intent to preempt, our preemption analysis invariably returns to those two cornerstones: Congress's purpose, and where it legislates in a

field which the States have traditionally occupied, Congress's clear and manifest intent to preempt state law."), <u>cert.</u> <u>dismissed</u>, ___ U.S. ___, 131 S. Ct. 60 (2010).

Thus, all of the cited acts of Master Geiger and Judge Emery were discretionary functions undertaken pursuant to their authority and within their adjudicative roles and jurisdiction over the Family Court case.  Those defendants are therefore absolutely immune, in their individual capacities, from Mazzu's damages claims for all of the acts and omissions cited in her claims.  Accordingly, the Court should dismiss with prejudice all of Mazzu's claims against defendants in their individual capacities.

B.   <u>Official Capacity Damages Claims</u>

The claims for damages asserted by Mazzu against defendants in their official capacities are, in effect, claims against the State.  Claims for damages cannot be maintained in federal court against unconsenting states and their agencies and officers, absent Congressional abrogation of the State's sovereign immunity.  <u>See</u> <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 33 (1st Cir. 2009); <u>see also</u> <u>P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993).  Neither a waiver of sovereign immunity, nor any Congressional abrogation of that immunity, exists as to the claims based on state law and 42

U.S.C. § 1983, asserted here.  See Will v. Mich. Dep't of State
Police, 491 U.S. 58, 67 (1989) (Congress did not abrogate
Eleventh Amendment immunity through section 1983).  Accordingly,
the Court should dismiss with prejudice the section 1983 claims
for damages asserted against defendants in their official
capacities.

The Court offers no opinion at this time as to whether the
Eleventh Amendment similarly bars Mazzu's claims for damages
under the ADA, asserted against defendants in their official
capacities.  The First Circuit has suggested that such a finding
may best be made upon a better developed record.  See Buchanan v.
Maine, 469 F.3d 158, 172 n.8 (1st Cir. 2006) (discussing benefits
of creating factual record to inform Eleventh Amendment
question).  Approving this recommendation will not preclude
defendants from raising an Eleventh Amendment defense to Mazzu's
ADA damages claim asserted against them.

II.  Motions to Stay State Court Case and Associated Claims

Mazzu has asserted claims for injunctive and declaratory
relief against the defendants in their official capacities,
including claims that defendants have violated her rights under
the ADA.  Mazzu seeks a declaration that her ADA rights have been
violated, that she has suffered exacerbated stress and pain as a
result, and that the decisions barring Goldblatt's participation

have violated her rights and impeded her defenses in the Family
Court.  The injunctive relief requested is an order staying the
Family Court proceeding, until either the federal case is
resolved or an ADA advocate is allowed to appear as Mazzu's
representative in the Family Court.  See Mazzu's Supp. Em. Mot.
for Stay (doc. no. 12); see also Goldblatt's Mem. in Support of
Mazzu's Supp. Mot. for Em. Relief, at 7 (doc. no. 10) (arguing
that Mazzu needs an ADA advocate at each stage of state court
proceeding, and stay is necessary to prevent state court from
violating Mazzu's right to have her request for accommodations
resolved confidentially).

### A.   Section 1983 Claims for Injunctive Relief

Section 1983 bars claims for injunctive relief asserted
against judges for actions taken in their judicial capacity,
"unless a declaratory decree was violated or declaratory relief
was unavailable."  42 U.S.C. § 1983; see also Adames v. Fagundo,
198 Fed. App'x 20, 22 (1st Cir. 2006).  Mazzu has not shown that
any declaratory decree has been violated, or that declaratory
relief is unavailable.  Accordingly, Mazzu's claims for
injunctive relief asserted against Judge Emery and Master Geiger
under section 1983 are barred.

B.    *Younger* Abstention

Assuming, without deciding, that the Anti-Injunction Act does not bar the injunctive relief sought,[3] the Court should deny the motion for a stay of the Family Court proceeding and should dismiss or stay certain associated claims, based on the Younger abstention doctrine.  The Younger doctrine "is a court-made rule of abstention built around the principle that, with limited exceptions, federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation." Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 31 (1st Cir. 2004).

In Younger v. Harris, 401 U.S. 37, 43-44 (1971), the Supreme Court held that federal courts must abstain from exercising jurisdiction when the plaintiff in the federal case is seeking to enjoin ongoing state criminal proceedings against him or her. The principles underlying Younger are comity between the federal and state courts, and federalism; it "would trivialize the

---

[3] The Anti-Injunction Act, 28 U.S.C. § 2283, provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized . . . , or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  Id.  One district court in this Circuit has concluded that the ADA does not expressly authorize a federal court to enjoin state proceedings.  See Safe Haven Sober Houses, LLC v. City of Boston, 517 F. Supp. 2d 557, 568 (D. Mass. 2007). Plaintiffs have pointed to no legislative history suggesting that Title II of the ADA falls within the "expressly authorized" exception to the Anti-Injunction Act, and this Court can find none, or any other decision on point.

principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 437 (1982).

In Samuels v. Mackell, 401 U.S. 66, 73 (1971), the Court held that ordinarily, the practical effect of declaratory relief will be the same as injunctive relief, meaning that a court declining to exercise jurisdiction over a claim for injunctive relief, to avoid interference with pending state court proceedings, must also abstain from considering a claim for declaratory relief. See Rossi v. Gemma, 489 F.3d 26, 35 (1st Cir. 2007) (citing Samuels, 401 U.S. at 72-73). A dismissal of claims on Younger grounds is without prejudice. See Maymo-Melendez, 364 F.3d at 32 n.4.

The First Circuit has also held that Younger abstention may apply to claims for damages that can have the same practical effect as a declaratory judgment. See Rossi, 489 F.3d at 37-38. In cases where no claim for damages has been asserted in the underlying state court case, the proper procedure is to stay that portion of the federal case seeking damages, rather than dismissing the federal case in its entirety. See id. at 38 (directing that claims for equitable relief be dismissed, while

claims for damages be stayed, because underlying proceeding could not redress claim for monetary relief).

The Younger abstention doctrine has been extended beyond the context of criminal proceedings to civil enforcement proceedings and to cases involving fundamental interests of the state's judicial system, including the state court contempt process and method of enforcing judgments.  Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56, 70 (1st Cir. 2005).  This Court has applied Younger to abstain from hearing claims seeking to enjoin the effect of certain state court orders, issued in a child custody proceeding involving only private parties, concerning the ability of the custodial parent to relocate to another state.  See Colassi v. Looper, No. 08-CV-115-JL, 2008 WL 2115160, at *2-*3 (D.N.H. May 20, 2008).

The Younger abstention doctrine provides that federal courts should abstain from enjoining pending state judicial proceedings when: (1) there is an ongoing state proceeding which is judicial in nature; (2) important state interests are involved; and (3) the plaintiff will have an adequate opportunity to raise relevant federal questions in the state proceeding.  See Middlesex Cnty., 457 U.S. at 432.  "Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, see U.S. Const., art. VI, are fully competent to adjudicate federal constitutional and

statutory claims properly presented by the parties." Casa Marie, Inc. v. Super. Ct. of P.R., 988 F.2d 252, 262 (1st Cir. 1993) (footnote omitted).  Federal courts can intervene in state court proceedings only where a plaintiff can show there is no opportunity to raise the federal issues in a state court, a state statute under attack is "flagrantly and patently violative of express constitutional prohibitions in every clause," or plaintiffs can show "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 53-54.  Absent such extraordinary circumstances, abstention is mandatory, not discretionary, under Younger.  See Rio Grande, 397 F.3d at 68.

Here, Mazzu's claims for injunctive and declaratory relief satisfy the criteria for mandatory abstention under Younger. Mazzu seeks a stay of an ongoing state Family Court proceeding involving the custody of Mazzu's child.  The state unquestionably has a strong interest in adjudicating family custody arrangements.  See Colassi, 2008 WL 2115160, at *2 (citing Moore v. Sims, 442 U.S. 415, 435 (1979), and Malachowski v. City of Keene, 787 F.2d 704, 708 (1st Cir. 1986)).  Moreover, the state judiciary has a strong interest in defining and interpreting the qualifications of persons who may appear in its courts, pursuant to state court rules and statutes.  See, e.g., Middlesex Cnty., 457 U.S. at 432 (applying Younger in abstaining from interfering

with attorney disciplinary proceedings); see also Bilodeau v.
Antal, 123 N.H. 39, 43-45, 455 A.2d 1037, 1040-41 (1983) (state
law provides that non-lawyers may appear on another party's
behalf case-by-case, as limited exception to general rule and
strong public policy against unauthorized practice of law).

    Nothing in the facts alleged in this case indicates any
extraordinary circumstances which would allow this Court to
interfere with the Family Court proceedings.  Mazzu has not shown
an inability to raise the federal constitutional claims or ADA
issues presented here in state court, although it is apparent
that claims for damages analogous to those asserted here are not
part of that custody dispute.  The Family Court had inherent
power to control its proceedings, to control the conduct of
parties to a lawsuit, and to control the court environment for
the purpose of ensuring that all parties have an opportunity to
advance issues in an atmosphere that is safe, decorous, and fair.
See In re O'Neil, 159 N.H. at 622, 992 A.2d at 678.  Such
inherent authority of the judiciary logically includes the
capacity to make rulings regarding the courtroom accommodations
necessary to ensure a party's full participation in the
proceedings, despite a disability.

Mazzu is represented by counsel in the Family Court proceeding and can confer with Goldblatt and counsel regarding ADA issues.  Nothing in the Family Court's orders prevents Attorney Mooney from reviewing and refiling appropriate motions and memoranda reiterating Goldblatt's earlier filings in order to assert the issues contained therein on Mazzu's behalf.  Mazzu has not provided any grounds for this court to conclude that she could not raise in the Family Court issues concerning her rights under the ADA and the United States Constitution with respect to her disability and Goldblatt's exclusion from those proceedings. Mazzu has similarly failed to make a strong showing of bad faith or other extraordinary circumstances that would warrant this Court's exercise of its injunctive or declaratory powers in a manner that would interfere with the state court proceeding.  The same reasoning applies to the claim for damages.  Because all three Younger factors are present in the instant case, this Court's abstention is mandatory.

Therefore, Mazzu's three motions to stay the Family Court proceeding (doc. nos. 9, 12, and 19) should be denied.  Mazzu's claims for damages under the ADA asserted against defendants in their official capacities should be stayed pending resolution of

26

the family court proceeding.  The remaining claims should be dismissed.

III. <u>Goldblatt's Claims</u>

    A.    <u>Claims as to Family Court Proceedings</u>

For reasons set forth above as to Mazzu's claims, Goldblatt's claims asserted against Master Geiger and Judge Emery in their individual capacities, for their judicial acts, are barred and should be dismissed.

    B.    <u>Official Capacity Claims</u>

For reasons set forth above as to Mazzu's official capacity claims, Goldblatt's claims for damages arising under state law and section 1983 should be dismissed as barred by the Eleventh Amendment.  Claims based on an asserted violation of Goldblatt's rights under the ADA may proceed.  Approving this recommendation will not preclude defendants from raising an Eleventh Amendment defense to the ADA damages claim asserted against them.

    C.    <u>Remaining Claims</u>

As to Goldblatt's remaining claims, the magistrate judge's review is limited to whether this court has subject matter jurisdiction.  Goldblatt has alleged sufficient facts to enable

27

this court to exercise jurisdiction over Claim 10, to the extent that it is not barred by sovereign immunity.  The bases for jurisdiction include 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental jurisdiction).

The Court also concludes, for the purposes of this subject matter jurisdiction review, that Goldblatt's remaining claims are not barred by the Younger abstention doctrine.  Younger does not preclude litigation by persons who are not closely related to parties to the underlying litigation.  See Allen v. Allen, 48 F.3d 259, 261 (7th Cir. 1995) (non-party to underlying proceedings is not barred by Younger from asserting claims in federal court); see also Casa Marie, 988 F.2d at 266 ("[T]he Supreme Court has intimated that Younger abstention might not apply in some instances to a federal plaintiff who was not a party, or not 'closely related' to a party in the pending state court proceeding." (citing Doran v. Salem Inn, Inc., 422 U.S. 922, 928-29 (1975))).

The test for whether a party is "closely related" to a party in a state court proceeding does not encompass Goldblatt because he is barred from participating in that state court case and cannot as a practical matter assert any basis for intervening. Goldblatt's claims, while related to Mazzu's, are not entirely

28

derivative of her claims, as the rights he has asserted are alleged to be his alone (including, for example, the right to be free from retaliation under the ADA for advocating on behalf of a disabled person, the right to due process, the right to equal protection, and the right to obtain certain information pursuant to state law).  Therefore, without passing any judgment on the validity or viability of his claims, the Court concludes that the claims at issue may proceed.

Conclusion

For the foregoing reasons, the Court should deny the motions seeking to enjoin the state family court proceedings (doc. nos. 9, 12, and 19).  Mazzu's claims for damages under the ADA asserted against defendants in their official capacities should be stayed pending resolution of the family court proceeding. Mazzu's remaining claims should be dismissed.

Goldblatt's claims asserted against Master Geiger and Judge Emery in their individual capacities for their judicial acts should be dismissed.  In addition, the Court should dismiss Goldblatt's claims seeking damages under section 1983, asserted against defendants in their official capacities.  Goldblatt's remaining claims, including his ADA claims asserted against defendants in their official capacities, may proceed.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  March 8, 2011

cc:  Kenn Goldblatt, pro se
     Sima Mazzu, pro se
     Nancy J. Smith, Esq.

LBM:nmd