UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

**Kenn Goldblatt et al.**

      **v.**                                    Case No. 10-cv-537-PB
                                              Opinion No. 2012 DNH 065

**Nancy J. Geiger et al.**

## MEMORANDUM AND ORDER

Kenn Goldblatt and Sima Mazzu, proceeding pro se, bring suit against an administrative judge, an associate justice, and a marital master of the Family Division of the New Hampshire court system (the "Family Court"). The case concerns defendants' exclusion of Goldblatt as Mazzu's non-attorney representative in a Family Court case instituted by Mazzu's ex-husband. Mazzu asserts a claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 et seq. ("ADA"). Goldblatt asserts claims under Title V of the ADA and under 42 U.S.C. § 1983 for violation of his due process and equal protection rights. Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In this Memorandum and Order, I grant defendants' motion to dismiss.

## I.   <u>BACKGROUND</u>[1]

The claims arise out of a child custody dispute that began more than five years ago in the Manchester branch of the Family Court (the "Manchester Court") and is currently before the Salem branch of the Family Court (the "Salem Court").  The proceeding involves Mazzu as respondent, her ex-husband, James, as petitioner, and a guardian ad litem ("GAL") appointed to represent Mazzu's daughter's interests.

### A.   <u>Mazzu's Requests for Accommodations from the Family Court</u>

Mazzu has Post-Traumatic Stress Disorder ("PTSD"), and her involvement in court proceedings exacerbates her disability.  In May 2009, Mazzu's attorney, Jannette Mooney, filed a request for ADA accommodations for Mazzu in the Manchester Court, citing PTSD as a disability qualifying her for the entitlements and benefits of that law.  These requests included, among others, never being subjected to examination by the opposing party, telephonic appearances, and the sealing of all documents related to her medical condition.  The Manchester Court denied the requested accommodations as "unreasonable" on June 18, 2009.  At that time, the presiding marital master in the case was Bruce Dalpra, and the presiding judge was Judge O'Neill.  Neither Dalpra nor

---

[1] The background is taken from the complaint (Doc. No. 1) construed under the Rule 12(b)(6) standard.

O'Neill are defendants in this action.

In June 2009, Mazzu moved for reconsideration of the decision denying her request for accommodations.  Before O'Neill ruled on Mazzu's motion for reconsideration, Mazzu and her ex-husband settled the action.

The following year, the parties became involved in litigation again.[2]  Marital Master Nancy Geiger and Judge John Emery, two of the defendants in this case, presided over the action.  In addition to Mazzu and her ex-husband, the case also involved a GAL who represented the interest of the parties' daughter.

In June 2010, Mazzu moved to appear telephonically at an upcoming conference with the GAL, scheduled for September 1, 2010.  In that motion, Mazzu noted that she "will file a more detailed accommodations request outlining the specific accommodations sought for future hearings."  The court granted Mazzu's motion the following day and informed Mazzu that the

---

[2] The parties do not explain the procedural posture of the Family Court proceedings.  It appears from Mazzu's June 30, 2010, motion to appear telephonically that she and her ex-husband were involved in a "parenting litigation" which they settled in November 2009.  However, a "relocation matter" subsequently arose and, in effect, a new litigation began with a different marital master and judge, albeit with the same docket number.  The exact procedural posture is not relevant to my decision.  I discuss it here only for clarification.

court would need "specific information as to exactly what accommodations were being requested well in advance of any hearing so that it can be reviewed and the appropriate arrangements can be made."  The hearing scheduled for September 1, 2010, was subsequently rescheduled to October 18, 2010.

On October 8, 2010, Mazzu filed a list of requested accommodations for the upcoming hearing.  The requests included the ability to appear telephonically and general flexibility with deadlines.  In a scheduling order dated November 2, 2010, the court noted that it was still considering Mazzu's requests for accommodations, as well as a subsequent request to keep Mazzu's records confidential.[3]  For an upcoming hearing on November 22, 2010, the court granted Mazzu's request to appear telephonically, and noted that if she attended the hearing in person, there would be a break and she would not be required to testify.  Mazzu attended the conference via telephone.

Shortly thereafter, Geiger recused herself from Mazzu's case because of a conflict.  Marital Master Jennifer Lemire took over the case.  Lemire subsequently recused herself because of a conflict with the GAL.  Because Geiger and Lemire were the only

---

[3] Neither the complaint nor the parties' briefs discuss the October 18th hearing.  I will assume that to the extent it occurred as scheduled, Mazzu was not required to participate without her requested accommodations.

two marital masters in the Manchester Court, Emery transferred the case to the Salem Court on January 12, 2011.

In the Salem Court, Mooney filed a motion requesting that Mazzu be allowed to appear telephonically for an upcoming status conference in March 2011.  The court granted the motion.  The court subsequently granted Mooney's request for Mazzu to appear telephonically at another hearing in June 2011.  The court further ordered that Mazzu "will be represented by her attorney in the courtroom. For so long as she has legal representation her attorney will speak on her behalf."  The court also directed Mazzu to submit a proposed list of accommodations she wished the court to order.

On August 12, 2011, Mooney submitted a letter to the clerk of court requesting various accommodations for Mazzu.  On September 2, 2011, before the court determined whether to grant Mazzu's accommodations, Mooney withdrew as Mazzu's attorney.  On October 13, 2011, the Salem Court granted all of Mazzu's requests for accommodations.[4]   The case is currently pending in the Salem Court.

---

[4] The court denied one of the requests as moot.  Mazzu asked that to the extent the court did not grant her request to appear telephonically, the court permit an advocate to be present at court proceedings.  Because the court granted Mazzu's request to appear telephonically, it denied that request as moot.

**B.    Goldblatt's Representation of Mazzu**

Sometime in August 2010, while the case was in the Manchester Court before Geiger and Emery, Mazzu hired Goldblatt, a non-attorney, as her ADA Advocate.  On August 20, 2010, Goldblatt filed an affidavit in the court, along with a durable power of attorney executed by Mazzu, and entered an appearance as Mazzu's non-attorney representative under New Hampshire Family Division Rule ("FD Rule") 1.18.[5]  FD Rule 1.18 requires a non-lawyer seeking to represent a party in Family Court to file a power of attorney and an affidavit disclosing certain information regarding prior convictions, prior violations of court orders or rules of professional conduct, and prior proceedings in which he or she has appeared on behalf of another person.

On August 24, 2010, the Family Court held a hearing regarding child custody issues.  Goldblatt participated by telephone.  On August 25, 2010, Goldblatt submitted for in camera review a packet of materials, including a motion for leave to file an amicus curiae brief and a proposed amicus brief addressing his role as an advocate for persons with disabilities under the ADA and Mazzu's rights under the ADA.  Over the

---

[5] Goldblatt cited a state district court rule when he entered his appearance in Family Court.  The rule is analogous to FD Rule 1.18.

succeeding weeks, Goldblatt filed pleadings in the Manchester Court, participated in an "ex parte hearing" scheduled by the GAL, exchanged emails with the GAL and Mooney, and moved for sanctions against Mazzu's ex-husband for filing frivolous pleadings.

With respect to the email exchange between the GAL and Mooney, Goldblatt became involved because he believed that those parties were engaged in "pointless bickering." Goldblatt informed the parties and the court of his belief in that regard. Goldblatt and Mazzu have asserted that the GAL filed a motion in the Manchester Court, citing an email from Goldblatt that the GAL characterized as "threatening." Thereafter, Goldblatt filed a memorandum in Family Court setting forth the context in which the cited email had been sent.

On September 27, 2010, Geiger considered whether Goldblatt was qualified to serve as Mazzu's non-attorney representative, in light of the requirements of FD Rule 1.18. Geiger reviewed the items filed by Goldblatt, including his affidavit specifying his prior litigation experience. Geiger also considered outside sources of information regarding cases in which Goldblatt had been involved, including an order published on a website. Geiger concluded that Goldblatt was not qualified to serve as a non-attorney representative in the Family Court. In her recommended

7

disposition of the issue, Geiger directed that Goldblatt be
barred from participating as Mazzu's representative.
Additionally, she directed that Goldblatt's filings be stricken
from the record.  Specifically, Geiger found that Goldblatt
"cannot satisfy the elements" of FD Rule 1.18, and further
concluded that:

> Mr. Goldblatt is permanently enjoined from making legal
> arguments, filing pleadings, or otherwise acting as Ms.
> Mazzu's attorney in this case.  Mr. Goldblatt's
> appearance is struck and all filings and pleadings that
> he has submitted to the Court will be returned to him
> and treated as if they were never filed, except for . .
> . Mr. Goldblatt's affidavit, his Durable Power of
> Attorney, and his Appearance as Sima Mazzu's non-
> attorney representative.  Mr. Goldblatt may work with
> Ms. Mazzu and her attorney, if they still wish to
> retain him, but he may not participate in this
> proceeding in any way as Ms. Mazzu's non-lawyer
> representative.  All pleadings filed relative to
> motions and submissions filed by Mr. Goldblatt are moot
> . . . .

Emery approved and entered Geiger's recommendations.

On October 4, 2010, Goldblatt filed a motion to reconsider
the September 27 order.  In a recommended decision issued by
Geiger and adopted by Emery on October 25, 2010, the court
reaffirmed its injunction against Goldblatt and denied the
motion.  The court found that Mazzu would suffer no prejudice
from Goldblatt's exclusion, as she had competent counsel, and she
and her attorney could continue to consult with Goldblatt
relative to ADA issues.  See Compl. Ex. F (Doc. No. 1-6).

On November 15, 2010, Goldblatt filed a petition for writ of mandamus in the New Hampshire Supreme Court, seeking reversal of the order enjoining his participation in the Family Court matter. The New Hampshire Supreme Court denied the petition.

After the case was transferred to the Salem Court and shortly after Mooney withdrew, Goldblatt entered an appearance as Mazzu's non-attorney representative.  Mazzu's ex-husband objected to Goldblatt's notice of appearance, arguing that although the matter was currently in front of the Salem Court, it was the same case as the one where the Manchester Court had "permanently enjoined" Goldblatt from "participat[ing] in this proceeding in any way as Ms. Mazzu's non-attorney representative."

On October 13, 2011, in the same order where the Salem Court granted all of Mazzu's requests for accommodations, the court ordered that Goldblatt would not be permitted to appear on behalf of Mazzu as her non-attorney representative.  The court reiterated the Manchester Court's directive that Goldblatt could continue to work with Mazzu.  The court reasoned that the matter was the same case as the Manchester Court proceeding, and therefore, the court had no authority or reason to set aside the Manchester Court's order prohibiting Goldblatt from representing Mazzu.

## II.   **STANDARD OF REVIEW**

In considering a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), I "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002).  The plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

When a plaintiff acts pro se, this court is obliged to construe the pleadings liberally in favor of the pro se party. See Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990).  That review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

### III.   ANALYSIS

Mazzu asserts a claim under Title II of the ADA.  Goldblatt asserts claims under Title V of the ADA and § 1983, alleging violation of his due process and equal protection rights. Defendants move to dismiss all claims.  I address each claim in turn.

### A.   Mazzu's Claim

Mazzu alleges a violation of her right of access to the courts under Title II of the ADA.  Specifically, Mazzu alleges that defendants denied her access to the courts in two ways: (1) they prevented Goldblatt from appearing as her representative in the Family Court proceedings; and (2) they failed to expeditiously grant Mazzu's requests for reasonable accommodations.[6]

---

[6] Mazzu suggests that defendants also violated her rights under the ADA by failing to seal documents related to her disability claims.  Mazzu has not put forth any support for the argument that the ADA requires documents related to an individual's disability be filed under seal.  Nor has she addressed that argument in her opposition papers.  Therefore, I will assume that Mazzu concedes that defendants did not violate her rights under the ADA when they failed to seal documents related to her disability.  See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly . . . .") (internal citations and quotation marks omitted), cert. denied, 494 U.S. 1082 (1990).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132. "A plaintiff seeking relief under Title II 'must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability.'" Kiman v. N.H. Dep't of Corrs., 451 F.3d 274, 283 (1st Cir. 2006) (quoting Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000)).

The Supreme Court has held that Title II protects a qualified individual's "fundamental right of access to the courts." Tennessee v. Lane, 541 U.S. 509, 533-34 (2004). Therefore, the ADA provides an "affirmative obligation to accommodate persons with disabilities in the administration of justice." Id. at 533. Although courts must take reasonable measures to remove any barriers to accessibility, "Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities . . . ." Id. at

531-32.  "It requires only reasonable modifications that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service."  Id. at 532 (internal quotation marks and citations omitted); see also 28 C.F.R. § 35.130(b)(7).

Mazzu has asserted that she has PTSD, which qualifies her as a disabled individual under the ADA.  Although neither the complaint nor Mazzu's objection to defendants' motion to dismiss discusses the effects of Mazzu's PTSD, defendants do not challenge Mazzu's alleged disability at this stage of the litigation.  Therefore, I will assume for purposes of this motion that Mazzu is a "qualified individual with a disability" under Title II.  See, e.g., Ralph v. Lucent Tech., Inc., 135 F.3d 166, 169 (1st Cir. 1998).

### 1.  Goldblatt's Appearance as Mazzu's Representative

Mazzu argues that defendants denied her right of access to the courts because they prevented Goldblatt from appearing as her non-attorney representative.  She argues that the ADA provides a right for a non-attorney to represent her in court.  She further argues that even if such a right does not specifically exist in the ADA, it was a reasonable accommodation that defendants denied her.  Defendants contend that the ADA does not grant a disabled individual the right to have a non-attorney represent her in

court.  They also argue that even if Goldblatt's representation were considered a reasonable accommodation, the ADA does not trump state laws setting forth certain requirements for non-attorney representatives.

### a.   ADA Right to Have Non-Attorney Representative

Mazzu argues that the Family Court's exclusion of Goldblatt as her non-attorney representative "violated [her] [ADA] rights to select her own advocate."  Mazzu Obj. 9 (Doc. No. 63-1). However, Mazzu does not point to any language in the ADA, or any case law, supporting the argument that the ADA establishes the right of a disabled litigant to have a non-attorney representative in court, let alone the specific representative he or she chooses.  Therefore, she has not made a developed argument that the ADA entitles her to be represented in court by a non-attorney representative.  See, e.g., Thomas v. Thomas, No. C11-1418 MJP, 2012 WL 628777, at *1 (W.D. Wash. Feb. 27, 2012) ("Here, Nozlic is not an attorney.  While she may have represented Thomas as an 'ADA Advocate' during administrative proceedings, Nozlic is not qualified to represent Thomas in a court of law.").

In any event, Mazzu fails to state a viable claim for relief even if I assume for purposes of analysis that the ADA entitles a disabled person to in-court representation by a non-attorney in

certain circumstances.  Family Court rules allow Mazzu to be
represented by a non-attorney representative so long as the non-
attorney representative complies with FD Rule 1.18.  The Family
Court reviewed Goldblatt's appearance, however, and determined
that Goldblatt could not represent Mazzu because he had failed to
comply with FD Rule 1.18.  Although it is clear that both Mazzu
and Goldblatt vigorously disagree with this finding, they are not
free to relitigate the state court determination in this court.
Whether or not Mazzu has a right under the ADA to be represented
in this court by a non-attorney representative in certain
circumstances, she does not have a right to be represented by a
specific non-attorney representative even though that
representative has failed to comply with reasonable standards
that the state court has required all non-attorney
representatives to meet.

> **b.   Goldblatt's Representation as a Reasonable
> Accommodation**

Mazzu also alleges that even if the ADA does not establish
the right to have a non-attorney representative, Goldblatt's
representation "was a significant accommodation that Mazzu was in
fact denied."  Mazzu Obj. 10 (Doc. No. 63).

As discussed, the ADA does not provide Mazzu with the right
to be represented by a non-attorney, especially if doing so would

trump a state law governing that area.  Although it is
conceivable that a disabled litigant could be entitled to a
qualified non-attorney representative as a condition for her
disability in certain circumstances, Mazzu was not denied that
right.  Rather, the court precluded her from having a non-
qualified person as her representative.  Although Mazzu may have
wanted Goldblatt to be her non-attorney representative, the ADA
requires a court to make a reasonable accommodation, not provide
the exact accommodation requested.  See, e.g., Tucker v.
Tennessee, 539 F.3d 526, 541 (6th Cir. 2008) ("[a court] is not
required to meet [a disabled person's] exact requests.  What is
required by the ADA-and what the state court provided in this
case-is an alternative which allows disabled persons to
communicate as effectively as a non-disabled person.") (citing 28
C.F.R. § 35.160); Santacrose v. CSX Transp., Inc., No. 07-15532,
2008 WL 2973889, at *1 (11th Cir. Aug. 5, 2008) ("While
[plaintiff] was not given the precise accommodation he requested
. . . , a qualified individual with a disability is not entitled
to the accommodation of his choice, but only to a reasonable
accommodation.").

　　　Throughout almost the entire Family Court proceeding, Mazzu
was represented by counsel who could and did speak on her behalf
at court proceedings.  Although Mazzu argues that because she is

currently without counsel in the Family Court proceeding she has a right to be represented in court by Goldblatt, that is simply not supported by the law, especially when the Family Court concluded that Goldblatt failed to comply with FD Rule 1.18. "The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally." Felix v. N.Y.C. Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003).

In short, where a state court allows an individual to be represented by either an attorney or a non-attorney, it does not violate the ADA to require that representative to follow certain state procedures or rules in order to appear in court. Therefore, Mazzu's claim under the ADA based on defendants' exclusion of Goldblatt as Mazzu's non-attorney representative cannot stand.

**2. Initial Denial and Subsequent Delay In Granting Accommodations**

Mazzu alleges that defendants violated her rights under the ADA by initially denying and subsequently failing to expeditiously grant her requests for accommodations. Mazzu first requested accommodations from the Manchester Court in May 2009. Those requests were denied as unreasonable by a judge and marital

master who are not defendants in this case.  Although Mazzu moved
to reconsider this determination, she settled the case before the
court could rule on the motion.  When the case resumed the
following year, Geiger and Emery were the presiding officials who
directed Mazzu to resubmit her requests for accommodations and
explain why the accommodations were necessary.  Although the
court did not act on the requested accommodations before the case
was transferred to the Salem Court, it allowed Mazzu to appear
telephonically at all hearings, thereby rendering many of her
requests moot.  The Salem Court eventually granted all of Mazzu's
requested accommodations.

Other than her May 2009 request for accommodations, Mazzu
has not alleged that any of her requests were denied.  Moreover,
even though the Manchester Court issued an order denying the May
2009 request, Mazzu does not allege that she ever had to attend
any hearing or court proceeding without her requested
accommodations.  Instead, her allegations make clear both that
she has attended every proceeding telephonically, and that the
Salem Court has granted all of her requests for accommodations.
Therefore, she has not sufficiently alleged that defendants
denied her reasonable accommodations under the ADA.

Mazzu also suggests that the delay in granting her requests
amounts to a violation of the ADA.  Specifically, Mazzu alleges

18

that her ailments are "exacerbated by the constant and
unrelenting psychological and emotional stress of the litigation
in which she is and continues to be an unwilling participant.  To
her, because of her condition, justice delayed is justice
denied."  Compl. ¶ 94 (Doc. No. 1).  This claim fails for two
reasons.

First, Mazzu never had to attend any court proceeding
without her requested accommodations.  She does not explain how
the delay in granting the accommodations caused her any injury.
Although it may have been inconvenient for her attorney to
resubmit her requests multiple times, that does not amount to a
violation of the ADA.  Mazzu's allegations concerning stress seem
to be directed toward the stress of the litigation itself, not
stress caused by a delay in granting accommodations.

Second, because her request was ultimately granted and she
was allowed to appear telephonically while the Family Court
considered her request, Mazzu's allegations do not support a
theory that the delay in granting her requests for accommodations
was motivated by "disability-based animus."  Forestier Fradera v.
Mun. of Mayagëz, 440 F.3d 17, 22-23 (1st Cir. 2006) (showing of
delay in a municipality's accommodation of a plaintiff's
disability, without more, was insufficient to establish the
disability-based animus required for actionable discrimination

under Title II).  Therefore, Mazzu has not alleged a claim under the ADA.

Accordingly, defendants are entitled to dismissal of Mazzu's claim under the ADA.

**B.   Goldblatt's Claims**

      **1.   Title V of the ADA**

Goldblatt brings claims under § 12203(a) & (b) for retaliation and interference.  He alleges that defendants violated the ADA's retaliation and interference provisions when they enjoined him from proceeding as Mazzu's non-attorney representative.  Defendants argue that Goldblatt has not alleged facts supporting a retaliation or interference claim.

           **a.   Retaliation**

The anti-retaliation provision of Title V of the ADA provides that "[n]o person shall discriminate against any individual who has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  § 12203(a).  "To establish a claim of retaliation, a plaintiff must show that (1) [he] engaged in protected conduct, (2) [he] suffered an adverse . . . action, and (3) there was a causal connection between the protected conduct and the adverse . . . action."  Freadman v.

Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007).
"The essence of a retaliation claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." Corujo-Marti v. Triple-S, Inc., 519 F. Supp. 2d 201, 222 (D.P.R. 2007) (citing Sifre v. Dep't of Health, 38 F. Supp. 2d 91, 101 (D.P.R. 1999), aff'd, 214 F.3d 23, 26 (1st Cir. 2000)).

Defendants argue that Goldblatt has not alleged a causal connection between his advocacy on behalf of Mazzu and the court's decision that he could not act as her non-attorney representative. Goldblatt essentially argues that defendants' purported reasons for excluding him as Mazzu's non-attorney representative are "pretextual," and so there is no possible reason other than retaliation. Although allegations that a defendant's explanation for supposed retaliatory actions are pretextual may, in certain cases, be enough to support a causal connection, that is not the case here.

Goldblatt invokes the phrase "pretext" numerous times in the complaint. His allegations, however, suggest only that defendants' reasoning for excluding him as Mazzu's non-attorney representative was incorrect, not that it was a pretext for

21

retaliation.  See, e.g., Compl. ¶ 14 (Doc. No. 1) (the
defendants' reasoning was "[b]ased on [Geiger's] misreading and
erroneous interpretation of the documents upon which the Order
relied").  Allegations that defendants' reasoning was erroneous
are not enough to adequately allege pretext.  See, e.g., Fuentes
v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) ("[T]he plaintiff
cannot simply show that the [defendant's] decision was wrong or
mistaken, since the factual dispute at issue is whether
[retaliatory] animus motivated the [defendant], not whether the
[defendant] is wise, shrewd, prudent, or competent").  Therefore,
Goldblatt has not alleged any facts to support a claim that
defendants' reasoning was pretextual.

Even if Goldblatt had plead pretext adequately, allegations
of pretext are not always sufficient to allege a retaliatory
motive.  "The ultimate question is whether the [defendant]
intentionally discriminated, and proof that the [defendant's]
proffered reason is unpersuasive, or even obviously contrived,
does not necessary establish that the plaintiff's proffered
reason . . . is correct."  Reeves v. Sanderson Plumbing Prods.,
Inc., 530 U.S. 133, 146-47 (2000) (internal quotation marks and
citations omitted); see also McDonough v. City of Quincy, 452
F.3d 8, 18 (1st Cir. 2006) (applying Reeves to a claim of
retaliation).  Thus, even when the plaintiff has alleged facts

22

suggesting that the defendant's proffered reasoning was pretextual, "there will be instances where . . . no rational factfinder could conclude that the action was discriminatory." " Reeves, 530 U.S. at 148; see also Brandon v. O'Mara, No. 10 Civ. 5174(RJH), 2011 WL 4478492, at *8 (S.D.N.Y. Sept. 28, 2011) ("Even if [plaintiff] is correct that the Academy's reasons for rating her unsatisfactory were erroneous or pretextual, she has only shown that the reasons for the rating were not those that the Academy gave; she has not shown anything about what the reasons actually were.").

Viewing Goldblatt's complaint under the 12(b)(6) standard, he has not alleged facts that suggest a retaliatory-animus. Goldblatt specifically admits that he does not know (and therefore, does not allege) defendants' motive in precluding him from acting as Mazzu's non-attorney representative.  His allegations provide no possible reason, plausible or implausible, for defendants to retaliate against him for advocating for Mazzu. The plausibility of Goldblatt's retaliation claim is further undermined because defendants allowed Goldblatt to continue to assist Mazzu, just not as her in-court representative. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal,

129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).
Therefore, Goldblatt has not adequately alleged a claim for
retaliation.

In any event, Goldblatt's claim that defendants' decision
was pretextual hinges on the argument that defendants' decision
was wrong.  Goldblatt, however, is collaterally estopped from
challenging defendants' reasoning.

Under New Hampshire law, collateral estoppel bars a party
from relitigating "any question of fact that was actually
litigated and determined against [him] in a prior suit." State
v. Charpentier, 126 N.H. 56, 60 (1985).  For collateral estoppel
to apply, the party against whom collateral estoppel is sought
must have had a "full and fair opportunity to litigate" the issue
and a final judgment must have been rendered. Aubert v. Aubert,
129 N.H. 422, 427-28 (1987).

Here, after defendants ordered Goldblatt not to act as
Mazzu's non-attorney representative, Goldblatt filed a motion for
reconsideration.  Defendants denied the motion.  Shortly
thereafter, Goldblatt filed a petition for writ of mandamus with
the New Hampshire Supreme Court seeking to reverse defendants'
order.  The New Hampshire Supreme Court denied the petition.
Thus, Goldblatt had a full and fair opportunity to litigate the
merits of defendants' order and the New Hampshire Supreme Court

24

issued a final judgment.  Goldblatt is collaterally estopped from arguing that defendants' reasoning for excluding him as Mazzu's non-attorney representative was pretextual.

### b.  **Interference**

Goldblatt further alleges that he was subject to interference in violation of § 12203(b).  The interference statute provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the ADA.  § 12203(b).  To adequately allege a claim of interference, Goldblatt must meet the same requirements necessary to assert a claim for retaliation under § 12203(a).  See Vazquez v. Mun. of Juncos, 756 F. Supp. 2d 154, 165 (D.P.R. 2010); see also Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 53-54 (2d Cir. 2002).

Goldblatt argues that defendants' act of enjoining him from proceeding as Mazzu's non-attorney representative is enough to show "interference" under § 12203(b).  However, he again ignores the actual elements of the claim; specifically, the requirement that he allege a causal connection between defendants' actions

and any assistance he provided to Mazzu in bringing an ADA claim. As discussed above, Goldblatt did not allege facts to support a retaliation claim under the ADA and, therefore, did not allege facts to support an interference claim.

Accordingly, because Goldblatt has not alleged a causal connection between defendants' order excluding his representation and his assistance in Mazzu's ADA claim, his retaliation and interference claims must fail.

### 2.   42 U.S.C. § 1983[7]

Goldblatt alleges that defendants violated § 1983 because they deprived him of his due process rights without using constitutionally adequate procedures.  He further asserts that defendants violated his equal protection rights by not allowing him to proceed as Mazzu's non-attorney representative when other courts allow him to act as a representative for disabled litigants.  Defendants argue that Goldblatt does not have any protected property interest or liberty interest that required procedural due process.  They further contend that Goldblatt has

---

[7] Goldblatt contends that he has four separate causes of action: a claim under the ADA, a due process claim, an equal protection claim, and a § 1983 claim.  There is no separate cause of action for a violation of § 1983.  Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 620 (1st Cir. 2000).  Rather, § 1983 is the vehicle through which an individual may bring suit for constitutional violations.  Therefore, Goldblatt's due process claim and equal protection claim are brought under § 1983.

not adequately alleged facts to support an equal protection claim.

### a.   **Procedural Due Process**

To establish a procedural due process claim, a plaintiff in Goldblatt's position must show that defendants deprived him of a protected liberty or property interest without constitutionally adequate process. Aponte-Torres v. University of P.R., 445 F.3d 50, 56 (1st Cir. 2006); see Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008). Thus, "to determine whether due process requirements apply in the first place, we must look . . . to the nature of the interest at stake." Bd. of Regents v. Roth, 408 U.S. 564, 570-71 (1972).  If the plaintiff adequately alleges a protected interest, "the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

### i.   **Property Interest**

To have a protected property interest, an individual must show more than a mere unilateral expectation of a benefit.  See, e.g., Roth, 408 U.S. at 577.  "He must, instead, have a legitimate claim of entitlement to it." Id.  Thus, a plaintiff must allege that there were "rules or mutually explicit understandings that support his claim of entitlement to the benefit." Perry v. Sindermann, 408 U.S. 593, 601 (1972); see also Roth, 408 U.S. at 577 (property interests are not created by

27

the Constitution, but "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits").  Therefore, rarely will an opportunity that rests on defendants' discretion rise to a property right protected by the due process clause.  See, e.g., Beitzell v. Jeffrey, 643 F.2d 870, 874 (1st Cir. 1981); Medina v. Rudman, 545 F.2d 244, 250-51 (1st Cir. 1976).

Goldblatt alleges that he had a protected property interest in participating as Mazzu's non-attorney representative, which was established both by the ADA and FD Rule 1.18.  Defendants argue that neither the ADA nor FD Rule 1.18 creates a property interest for a non-attorney to act as an attorney.

As I discussed in addressing Mazzu's ADA claim, the ADA does not establish the right for a non-attorney to act as a disabled individual's attorney in court.  That is particularly the case when doing so would conflict with state law requirements.  See Harris v. Mills, 572 F.3d 66, 74 (2d Cir. 2009).  Indeed, Goldblatt himself admits that he "cannot cite a case law reference in support of" his position.  Goldblatt Obj. 15 (Doc. No. 62).  Therefore, the ADA does not establish a property interest in Goldblatt's in-court representation as an attorney.

28

Nor does FD Rule 1.18 provide such a property interest.  FD Rule 1.18 establishes specific minimum requirements which must be met for an individual to proceed as a non-attorney representative.  It does not purport to grant a non-attorney representative who complies with the rule an entitlement to represent third parties in Family Court.  Because the rule does not restrict the court's discretion to exclude non-attorneys from representing third parties in appropriate cases even if they have complied with FD Rule 1.18, the rule does not give non-attorneys a protectable property right to represent third parties.  See Leis v. Flynt, 439 U.S. 438, 442-43 (1979) (where power to approve pro hac vice appearances is committed to the court's discretion, they do not give rise to a protectable property interest).

## ii.  **Liberty Interest**

Goldblatt also suggests that he was deprived of a reputation-based liberty interest, claiming that his "professional reputation [was] damaged[] by the Defendants' actions related to his being 'enjoined from making legal arguments, filing pleadings, or otherwise acting as Ms. Mazzu's non-attorney representative.'"  Compl. ¶ 8(c) (Doc. No. 1).

The First Circuit has determined that

29

> [T]he Fourteenth Amendment procedurally protects
> reputation only where (1) government action threatens
> it, (2) with unusually serious harm, (3) as evidenced
> by the fact that employment (or some other right or
> status) is affected. Moreover, the municipality
> terminating the employee must also be responsible for
> the dissemination of defamatory charges, in a formal
> setting (and not merely as the result of unauthorized
> "leaks"), and thereby significantly have interfered
> with the employee's ability to find future employment.

Silva v. Worden, 130 F.3d 26, 32-33 (1st Cir. 1997) (citations

and internal quotation marks omitted).  Thus, even when a false

and defamatory reason is cited for discharging an individual, the

individual is not deprived of "liberty" unless that reason is

communicated to others, because otherwise, "it cannot properly

form the basis for a claim that [individual's] interest in his

'good name, reputation, honor, or integrity' was thereby

impaired."  Bishop v. Wood, 426 U.S. 341, 348 (1976) (quoting

Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)).

Here, other than quoting the standard from Wisconsin,

Goldblatt does not address his asserted liberty-based reputation

claim.  Goldblatt does not explain how his reputation was in any

way damaged by the court's order enjoining his participation from

the case because of his non-compliance with a rule.  Nor does he

allege that any other court is even aware of the order.

Therefore, Goldblatt has not alleged a liberty-based property

interest in his reputation.

### iii.  **Adequacy of Process Provided**

Goldblatt's due process claim fails even if FD Rule 1.18 gives him a protectable property or liberty interest in representing third parties in Family Court in certain circumstances.  Goldblatt was given an opportunity to comply with Rule 1.18 and, after his effort failed, he was given an opportunity to contest the court's adverse ruling both in Family Court and in the State Supreme Court.  The due process clause does not entitle him to more process than he received. Accordingly, his due process claim necessarily fails even if FD Rule 1.18 gives him a protectable property or liberty interest in representing third parties in Family Court.

### b.  **Equal Protection**

Goldblatt alleges that defendants violated his right to equal protection, but does not explain the basis for that allegation in his complaint.  At oral argument on defendants' initial motion to dismiss, Goldblatt classified his equal protection claim as a "class of one" claim.  Goldblatt alleges that he "was treated differently by the Defendants than he was by two (2) other judges in the State of New Hampshire where he was allowed to participate in a Superior Court and the Supreme Court of New Hampshire under the terms of the same statute that Defendants used to enjoin him from the Mazzu case."  Goldblatt

31

Resp. ¶ 3(a)  (Doc No. 75)

The Equal Protection Clause of the Fourteenth Amendment guarantees that "all persons similarly situated should be treated alike." City of Cleburne Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  As Goldblatt concedes, he does not allege that he belongs to a protected class, and instead brings a "class-of-one" equal protection claim.  Such claims necessarily fail unless the plaintiff can demonstrate that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Here, as I have explained, the state court determined that Goldblatt could not appear in court on Mazzu's behalf because he was not eligible to represent her under FD Rule 1.18.  Goldblatt is not free to relitigate his compliance with that rule here, and the court's determination that he did not comply with the rule is a sufficient justification for its ruling.

Therefore, because Goldblatt has not alleged any facts that state a claim for an Equal Protection Clause violation, defendants are entitled to dismissal with regard to the portion of Goldblatt's § 1983 claim based on equal protection.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, I grant defendants' motion to dismiss (Doc. No. 58).  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

April 2, 2012

cc:  Kenn Goldblatt, pro se
     Sima Mazzu, pro se
     Nancy J. Smith, Esq.